OPINION. Van Fossan, Judge-. A single issue is presented by each of the two cases here before us.' Both are questions of facts. In the corporation case the question is, was the amount of $84,748.33 paid by petitioner corporation consequent on a compromise settlement with Skipwith of a suit for damages an ordinary and necessary expense of the corporation business and deductible as such, or was it a capital expenditure made in the purchase of a capital asset, therefore not deductible ? Respondent confesses error as to part of the above amount originally determined, viz., $23,251.67, being that part of the compromise payment attributable to commissions due. In the Summers case, the question is, did petitioner Summers receive income in an aggregate sum of $84,748.33, said sum being the same payment actually paid to Skipwith but contended by respondent to represent a clearing of the patent owned by Summers from claims and liens? The answer to both questions is to be found in the proper characterization of the compromise payment. Respondent contends that the compromise settlement of the lawsuit for damages was, in fact, the purchase of a capital asset. After a careful study of the record, we have concluded and found as a fact that respondent erred and that the payment did not represent the purchase of a capital asset. The contract with Skipwith made him the exclusive sales agent for the corporation, and no more. It did not purport to, nor did it, in fact, give Skipwith any interest in the ownership of the Camloc patent nor did Skipwith acquire any such interest in any other way. The simple fact is that Skipwith had no actual or direct interest in the patent at any time, and, despite the all comprehensive legal lingo of the settlement agreement, he sold nothing and had nothing to sell. It is not unusual for legal draftsmen to employ extravagant or inartful or inappropriate phrases in characterizing a relatively simple transaction. Thurlow E. McFall, 34 B. T. A. 108; Inaja Land Co., Ltd., 9 T. C. 727. Thus, albeit the contract, which was drawn by Skipwith’s attorney, speaks in terms of a sale of “Skip-with’s title, right and interest in said U. S. letters patent,” etc., the preceding “Whereas” sets out the limit of Skipwith’s interest, i. e.< that “Skipwith claims a lien upon such patent pursuant to a contract dated July 26,1939.” When the 1939 contract is examined, it reveals no granting to Skipwith of any interest in the patent. It merely gave him a “lien and encumbrance” on the patent to secure payment of unpaid obligations under the agreement. It was not a granting of property or of ownership rights in property. It gave Skipwith a right to resort to equity to enforce payments due. It follows that by the compromise agreement nothing was sold. Therefore, respondent’s contention that the deal was the purchase of a capital asset by the petitioner corporation or by Summers must fail. The above holding is practically an end of necessary discussion of the corporation case. The payment was not the purchase of a capital asset. Respondent concedes that, so far as the sum of $108,000 originally disallowed represents commissions earned, it is deductible as an ordinary and necessary expense of petitioner’s business. Such commissions amounted to $23,251.67. The remainder, or $84,748.33, was in compromise of the suit for damages brought by Skipwith because of the termination of the exclusive sales contract — clearly an ordinary and necessary expense of the corporation business. International Shoe Co., 38 B. T. A. 81. There was no element of illegality or of conspiracy such as has been held a barrier to deductions in some cases. See National Outdoor Advertising Bureau, Inc. v. Helverying, 89 Fed. (2d) 878; Burroughs Building Material Co. v. Commissioner, 47 Fed. (2d) 178. There is no doubt that this compromise payment grew directly out of- petitioner’s business. The deduction by the corporation of the sum of $84,748.33 attributable to damages, together with the sum of $23,251.67 now conceded by respondent to be deductible, is therefore, approved. The determination of the deficiency against Summers was apparently in the nature of an anchor to windward. The sum of $84,748.33 is the identical sum disallowed by respondent as a deduction and added back to the corporate income in the above discussed case of the corporation. As to the item, the statement attached to the notice of deficiency states: It has been determined that a certain payment designated on the records as pertaining to the matter of litigation with one Lee Skipwith, in the amount of $84,748.33, made on or about April 16, 1941 by the Camloc Fastener Company, Inc., 420 Lexington Avenue, New York, New York, did constitute the receipt by you of taxable income. In his brief, respondent explains his position thus: It is the contention of respondent that Summers in the transaction became indebted to the corporation in the amount of $84,748.33 advanced in his behalf, and that to the extent of the accrued liabilities due him by the corporation for royalties in the amount of $67,232.49, and unpaid salary in the amount of $7500.00, Summers received payment at least by equitable set-off. The corporation was dissolved during the taxable year, and, it appears so far as settlement of the debt to the corporation is concerned, nothing else was done. Under such conditions equity would apply the amounts due Summers on the books of the corporation to the discharge pro tanto of the debt due by him for the advancement to Skipwith. Respondent says very little in amplification or support of the above determination. In the next paragraph of his brief following the above quoted matter, he states, “Summers otherwise never received payment for the royalties due or the salary unpaid. Had he in any other manner been paid or the indebtedness otherwise discharged, he would have said so when examined as a witness.” Speaking frankly, we confess it to be difficult to grasp respondent’s theory of how the compromise payment to Skipwith made by the corporation in settlement of damages for termination by the corporation of the agency contract became income-to Summers. Although the agency contract was in the name of Summers, it was so drawn only for convenience, the real party in interest being the corporation which authorized it, ratified it, and performed under it. The corporation paid Skipwith the commissions as they were earned. It produced and furnished the manufactured products. In all practical aspects it assumed and performed the contract. Summers acted only as an agent for the corporation. When it came to enforcing his right, Skipwith sued both the corporation and Summers, but no service of process was made on Summers. The three parties joined in the settlement agreement, Summers acting for the corporation pursuant to prior blanket authorization. The real debtor was the corporation. Analyzing respondent’s statement of contentions above quoted, the fact is that Summers did not become indebted to the corporation in any amount. The payment by the corporation was made on its own behalf and in settlement of its own liability. Summers had acted throughout pursuant to prior authorization from the corporation and as its agent. We see no basis for invoking the doctrine of equitable set-off. Similarly as to the concluding statement, the corporation did not advance the money for or on behalf of Summers, but in its own interest. As to respondent’s animadversions as to Summers’ testimony, we can not conjecture what Summers would have said had the facts been otherwise than they were. The only advantage personally derived by Summers from the compromise agreement was the intangible advantage of ridding the patent of the contingent liability to respond for default of the corporation— an element not measurable in dollars. Assuming that, by some legerdemain, it be held that Summers received income in the amount of $84,748.33 when that sum was paid to Skipwith by Summers as president and agent of the corporation, which amount we have held to be deductible, the question arises, is the same amount to be again deducted from the corporation income? In short, we are unable to follow respondent’s argument to any logical conclusion. We hold that he erred in his determination. Decisions will be entered under Rule 50.